```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
KONDOT S.A.,

                        Plaintiff,            MEMORANDUM & ORDER
                                              20-CV-3103 (PKC) (RER)
        - against -

DURON LLC,

                        Defendant.
-------------------------------------------------------x
```
PAMELA K. CHEN, United States District Judge:

On July 13, 2020, Plaintiff Kondot S.A. ("Kondot") commenced this admiralty and maritime action against Defendant Duron LLC, pursuant to Federal Rule of Civil Procedure ("FRCP") 9(h). (Complaint ("Compl."), Dkt. 1.) Shortly thereafter, on July 14, 2020, Plaintiff filed an application for a writ of maritime attachment and garnishment.[1] (Dkts. 6, 6-1.) The Court granted Plaintiff's writ, on the record, at a July 15, 2020 *ex parte* motion hearing, contingent on Plaintiff submitting an amended memorandum of law and attorney affirmation. (*See* Minute Entry, July 15, 2020.) Plaintiff submitted both that same day (Dkts. 8, 9), and the Court issued the writ (Dkts. 10, 11). In light of the *ex parte* nature of the proceedings, and the fact that Plaintiff submitted amended documents, the Court now supplements its on-the-record statements granting Plaintiff's application for a writ.

---

[1] Plaintiff also sought a motion to compel arbitration. (Dkts. 6, 7.) That matter was subsequently resolved by the parties. (*See* Plaintiff's July 16, 2020 Letter, Dkt. 13; Docket Order, July 17, 2020.)

1

## BACKGROUND[2]

On or about April 17, 2020, Plaintiff, a foreign corporation with its principal place of business in Nevis (Compl., Dkt. 1, ¶ 4), entered into a maritime charter party contract ("charter party") with Defendant, a Florida limited liability company with its place of business in Miami (*id.* ¶¶ 4–6). In accordance with the charter party, on or about May 15, 2020, in Houston, Texas, Defendant loaded 29,997 metric tons of wheat onto the chartered vessel, the M/V Hanze Gendt (the "Vessel"). (*Id.* ¶¶ 6–7.) Although the agreed upon discharge port was Matarani, Peru (*id.* ¶ 8), Defendant did not instruct that the cargo be unloaded when the vessel reached that port (*id.* ¶ 9), but negotiated with Plaintiff for a change in the Vessel's itinerary, wherein the Vessel would sail to Puerto Cabello, Venezuela for discharge, in exchange for Defendant paying Plaintiff a lump sum additional freight of $365,000 and an additional $11,600/day detention fee for every day that the Vessel waited in Matarani (*id.* ¶¶ 10–11). The Vessel has been idle and waiting for instructions at Balboa since June 5, 2020. (*Id.* ¶ 12.) Plaintiff has, therefore, sustained damages in the amount of $624,675.92. (*Id.* ¶ 19.)

Mid-Ship Group LLC (the "garnishee") is the charter party broker acting for and on the behalf of Defendant in relation to the Charter Party. (*Id.* ¶ 29; *see also* Amended Declaration of Attorney Lennon ("Lennon Am. Decl."), Dkt. 8, ¶¶ 6–8.) In fact, "Defendant's funds are held by its charter party broker, [the garnishee], within the Eastern District of New York[,] which sends

---

[2] As explained *infra*, the Second Circuit has adopted the pleading standard articulated in *Bell Atlantic v. Twombly*, 550 U.S. 544, 569–70 (2007), for the purposes of evaluating applications for writs of attachment under Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"). *DS-Rendite Fonds Nr. 108 VLCC Ashna GMBH & Co Tankschiff KG v. Essar Capital Ams.*, 882 F.3d 44, 50 (2d Cir. 2018) (hereinafter "*DS-Rendite*"). The Court therefore, at this stage of the litigation, assumes the truth of all non-conclusory factual allegations asserted in support of the application for a writ of attachment. *See id.*

and receives funds on behalf of [] Defendant, within the Eastern District of New York. (Lennon Decl., Dkt. 8, ¶ 6; *see also* May 14, 2020 Wire Remittance, Dkt. 8-1.)

## LEGAL STANDARD

The Second Circuit has explained:

> To secure an *ex parte* order of attachment under Rule B[3], a plaintiff bears the burden of establishing a right to attachment. The Rule requires the following showing. First, a plaintiff must file a verified complaint praying for attachment and an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district. Second, the complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process. Finally, the district court must then review the complaint and affidavit and, if the conditions of Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. If an attachment is ordered, [pursuant to Rule E,] any person claiming an interest in the attached property shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted.

*DS-Rendite*, 882 F.3d at 48–49 (internal quotation marks, alterations, and citations omitted).

The *Twombly* standard is the appropriate inquiry for evaluating whether a Rule B application for a writ of attachment is sufficiently pled, *i.e.*, whether Plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Id.* at 50 (quoting *Twombly*, 550 U.S. at 570). In the context of Rule B, "to render the garnishee's possession of identifiable property of the defendant plausible, the facts alleged must provide sufficient specificity either as to the nature of the business relationship between the garnishee(s) and the defendant and/or the nature of the defendant's property subject to the attachment." *Id*; *see also id.* at 51 ("[T]he pleading must provide targeted guidance as to the property that is the subject of the hearing.").

---

[3] Supp. Rule B(1) outlines the applicable standards for judicial authorization of an *ex parte* application for a maritime writ of attachment.

# DISCUSSION

I. **Writ of Attachment for Garnishee Mid-Ship LLC**

For the reasons stated on the record at the July 15, 2020 hearing and contained herein, the Court finds that, in its supplemental submissions, Plaintiff has met its burden to obtain an *ex parte* writ of attachment under Rule B. First, the Court finds that Plaintiff has filed the correct paperwork, including a verified complaint and affidavit, as described *supra*. *See DS-Rendite*, 882 F.3d at 48–49.

Moreover, under Rule B, a plaintiff may

> obtain an order of attachment if it can show that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.

*Blue Whale Corp. v. Grand China Shipping Dev. Co., Ltd.*, 722 F.3d 488, 493 (2d Cir. 2013) (internal quotation marks and citation omitted).

A. **Factor One: *Prima Facie* Admiralty Claim**

In the Rider Clauses to the charter party, Plaintiff and Defendant agreed that their contract would be construed in accordance with the laws of the United States. (Rider Clauses, Dkt. 1-1, at ECF[4] 19, Clause 46.) Pursuant to the laws of the United States, the Court is granted jurisdiction over admiralty or maritime claims pursuant to 28 U.S.C. § 1333(1), and "[i]t has long been decided that this grant includes jurisdiction over all contracts which relate to the navigation business, or commerce of the sea," *Budisukma Permai SDN BHD v. N.M.K. Prods. & Agencies Lanka (Private) Ltd.*, 606 F. Supp. 2d 391, 396 (S.D.N.Y. 2009) (citations and alteration omitted) (citing, *inter alia*, *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 24–25 (2004)). The contract at issue details how

---

[4] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

and when the parties would charter a cargo of perishable wheat between two ports. (*See generally* Charter Party, Dkt. 1-1, at ECF 11–18; Rider Clauses, Dkt. 1-1, at ECF 19–36; Parties' E-mails Detailing the Alleged Breach, Dkt. 1-3.) There is no dispute that the charter party is a maritime contract. *See Budisukma Permai SDN BHD*, 606 F. Supp. 2d at 396 ("There is no serious dispute that the Charter Party is a maritime contract."); *see also Fednav, Ltd. v. Isoramor, S.A.*, 925 F.2d 599, 601 (2d Cir. 1991) ("It is well established that a charter party agreement is a maritime contract.") (collecting Supreme Court cases decided before 1926).

A breach of a maritime contract constitutes a "valid *prima facie* admiralty claim" when the "claims asserted are maritime in nature," as opposed to a dispute relating directly to "the business of maritime commerce [such] that it does not implicate the concerns underlying admiralty and maritime jurisdiction." *Kolmar Grp. A.G. v. Trapco Enters. Private Ltd.*, 651 F. Supp. 2d 209–10 (S.D.N.Y. 2009) (internal quotation marks and footnotes omitted). "When the dispute arises from a contract, the court must consider also the 'nature and character' of the relevant contract to determine whether it has reference to maritime service or maritime transactions."

As discussed *supra*, the contractual dispute at issue relates directly to the location of the Vessel and the agreed-upon detention fees, an issue severable from the discharge and purchase of the cargo (*see* Compl., Dkt. 1, ¶¶ 12– 20); in other words, the contract at issue is not merely "a contract for the sale of goods [that] is [] converted to a maritime contract merely because the subject goods are transported on a ship." *Kolmar Grp. A.G.*, 651 F. Supp. 2d at 211 (footnote omitted). The Court, therefore, finds that Plaintiff has asserted a *prima facie* admiralty claim.

### B.  Factors Two, Three, and Four

The Court finds that Plaintiff has satisfactorily pleaded that Defendant and its property cannot be found within the Eastern District of New York. *See Blue Whale Corp.*, 722 F.3d at 493.

5

"[T]o be found within the jurisdiction so as to render an attachment inappropriate, the defendant must not only be found for service of process, but also be engaged in sufficient activity in the district to subject it to jurisdiction even in the absence of a resident agent expressly authorized to accept process." *Dominion Bulk Chartering Ltd. v. Am. Metals Trading LLP*, 419 F. App'x 121, 122 (2d Cir. 2011) (summary order) (alteration omitted) (quoting *ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, 585 F.3d 105, 111–12 (2d Cir. 2009)). As to the second and third factors, Plaintiff has sufficiently attested that Defendant may not be served in this District, and that Defendant does not engage in activity in this District. (*See* Lennon Am. Decl., Dkt. 8, ¶¶ 2–4.)

As to the fourth factor, the Court has not identified any statutory or maritime law bar to the attachment. *See Blue Whale Corp.*, 722 F.3d at 493.

### C. Garnishee's Possession

Finally, to successfully plead a writ of attachment, a plaintiff must identify the property to be attached and garnished and, "[i]n order to render the garnishee's possession of identifiable property of the defendant plausible, the facts alleged must provide sufficient specificity either as to the nature of the business relationship between the garnishee(s) and the defendant and/or the nature of the defendant's property subject to the attachment." *DS-Rendite*, 882 F.3d at 50. The Court finds that Plaintiff, in its amended declaration via counsel, has successfully pleaded both.

Counsel has attested "[u]pon information and belief, the Defendant has, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of non-party garnishee charger broker, Mid-Ship Group LLC." (Lennon Am. Decl., Dkt. 8, ¶ 6.) Counsel's affidavit specifically points to a May 14, 2020 wire transfer of funds for $793,656.68 from Defendant and held by garnishee (the "Wire Transfer")

(*id.* ¶¶ 6, 8; Wire Transfer, Dkt. 8-1.)[5] At the July 15, 2020 motion hearing, Plaintiff clarified to the Court that Plaintiff believes those funds are located within the Eastern District, despite the Correspondent Bank's location in the Southern District of New York (*see* Wire Transfer, Dkt. 8-1), as garnishee is located in Port Washington, New York, which is within the Eastern District of New York (*see id.*).

Plaintiff has also successfully pleaded the relationship between the garnishee and the Defendant, *i.e.*, that the garnishee is Defendant's charter party broker acting on Plaintiff's behalf in its negotiations with Defendant. (*See* Compl., Dkt. 1, ¶ 29; *see also* July 2020 E-mails, Dkt. 1-2 (e-mails between Plaintiff, Defendant, and garnishee).)

## II. Writ of Attachment for Additional, Unnamed Garnishees

For the reasons already discussed on the record at the July 15, 2020 hearing, the Court denies Plaintiff's request, reiterated in its amended filings, to "serve any additional garnishee(s) who may, upon information and belief obtained in the course of this action, to be holding, or believed to be holding, property of the Defendant, within this District" to "allow for prompt service of Maritime Attachment and Garnishment without the need to present to the Court an amended writ" (Lennon Am. Decl., Dkt. 8, ¶ 14), for failure to state a claim upon which a writ may be ordered. "Entitlement to an attachment must be based on more than a conclusory allegation that . . . it is anticipated and expected that Defendant[] will have property in this District [and] in the possession of garnishees during the pendency of the requested order." *DS-Rendite*, 882 F.3d at 51

---

[5] The Court notes that, although the property at issue in the Writ of Attachment consists of funds that were electronically transferred ("EFT"), pursuant to Plaintiff's pleadings and statements on the record, those funds are not subject to the *Jaldhi* prohibition against attaching EFTs that are "in the temporary possession of an intermediary bank." *See Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 71 (2d Cir. 2009). The Wire Transfer indicates that the "Ordering Customer" of Defendant's property is garnishee, a company found within this District, and thus the funds are not in the possession of an intermediary bank.

(internal quotation marks, alterations, and citations omitted); *see also Denali Shipping, L.P. v. Van Oil Petroleum Ltd.*, 427 F. Supp. 3d 279, 284 (D. Conn. 2019).

## CONCLUSION

Considering the *ex parte* nature of the proceedings, and the fact that Plaintiff has submitted amended documents, the Court supplements its statements and findings at the July 15, 2020 hearing, granting Plaintiff's application for a writ of maritime attachment. Plaintiff shall, via e-mail, promptly provide copies of this memorandum and order to both garnishee and Defendant.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: July 22, 2020
       Brooklyn, New York